UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

---

SIZZLING BLACK ROCK STEAK
HOUSE FRANCHISING, INC., a
Michigan corporation,

       Plaintiff,

v

BLACK ROCK CORAL SPRINGS,
LLC, a Florida limited liability company,
7TH BITE OF THE APPLE, LLC, a
Florida limited liability company, PAUL
SAMSON, individually, FRANCHISE
HOLDINGS, LLC, a Florida limited
liability company, and SCOT STREMS,
individually,

       Defendants.

CASE No:  2:24-cv-10380

**COMPLAINT**

---

Mark J. Burzych (P43793)
Eric P. Conn (P64500)
James A. Budreau (P85671)
Fahey Schultz Burzych Rhodes
Attorneys for Plaintiff
4151 Okemos Road
Okemos, MI 48854
(517) 381-0100
mburzych@fsbrlaw.com
econn@fsbrlaw.com
jbudreau@fsbrlaw.com

## COMPLAINT

SIZZLING BLACK ROCK STEAK HOUSE FRANCHISING, INC. ("BLACK ROCK"), for its Complaint against the defendants BLACK ROCK CORAL SPRINGS, LLC ("BR CORAL SPRINGS"), 7TH BITE OF THE APPLE, LLC ("7TH BITE"), Paul Samson ("Mr. Samson"), FRANCHISE HOLDINGS, LLC ("FRANCHISE HOLDINGS"), and Scot Strems ("Mr. Strems") (collectively, the "Defendants"), states as follows:

### JURISDICTION AND VENUE

1.     This is an action for breach of contract and trademark infringement under the Lanham Act, 15 U.S.C. §1501 et seq. and Michigan common law.

2.     This Court has jurisdiction over the subject matter of this action under 15 U.S.C. § 1121 (action arising under the Lanham Act); 28 U.S.C. § 1331 (federal question); and 28 U.S.C. § 1338(a) (any Act of Congress relating to trademarks). This Court also has supplemental jurisdiction over BLACK ROCK's breach of contract and other state law trademark claims pursuant to 28 U.S.C. § 1367, as they are part of the same case or controversy.

3.     Venue is proper in this district under Section 19.8 of the Franchise Agreement (defined below) as the parties irrevocably submitted to the exclusive venue in this judicial district.

## THE PARTIES

4.　　BLACK ROCK is a Michigan corporation with its principal place of business at 30553 S. Wixom Road, Suite 300, in the City of Wixom, County of Oakland, State of Michigan.

5.　　BR CORAL SPRINGS is a Florida limited liability company with its principal place of business at 2344 N. University Drive, Coral Springs, Florida 33065. 7TH BITE is the Manager of BR CORAL SPRINGS. 7TH BITE and FRANCHISE HOLDINGS are the Members of BR CORAL SPRINGS. A true and correct copy of BR CORAL SPRINGS's Operating Agreement, provided to BLACK ROCK from Mr. Samson and Mr. Strems, is attached hereto as **Exhibit A**.

6.　　7TH BITE is a Florida limited liability company with its principal place of business at 401 N. Howard Avenue, Tampa, Florida 33606. Mr. Samson is the sole member of 7TH BITE.

7.　　Mr. Samson is a Florida resident with an address of 618 S. Lois Avenue, Tampa, Florida 33609.

8.　　FRANCHISE HOLDINGS is a Florida limited liability company with its principal place of business at 7901 4th Street N., Ste. 300, St. Petersburg, Florida 33702. Mr. Strems is the sole member of FRANCHISE HOLDINGS.

9.　　Mr. Strems is a Florida resident with an address of 4251 Salzedo Street, E511, Coral Gables, Florida 33146.

10.     On January 25, 2022, BR CORAL SPRINGS entered into a Franchise Agreement and subsequent First Addendum to Franchise Agreement with BLACK ROCK (collectively, the "Franchise Agreement") to operate a full-service restaurant franchise in Coral Springs, Florida. A true and correct copy of the Franchise Agreement is attached hereto as **Exhibit B**.

11.     7TH BITE, Mr. Samson, FRANCHISE HOLDINGS, and Mr. Strems are collectively referred to and defined as the Principals of BR CORAL SPRINGS, LLC under the introductory paragraph and Section 19.17, respectively, of the Franchise Agreement (collectively, the "Principals").

12.     On January 25, 2022, 7TH BITE and Mr. Samson, individually, each respectively executed a Personal Guaranty of Principals (the "Personal Guaranty") to personally and jointly and severally guarantee BR CORAL SPRINGS's performance under the Franchise Agreement. A true and correct copy of the Personal Guaranty is attached hereto as **Exhibit C**.

### THE BLACK ROCK SYSTEM AND MARKS

13.     BLACK ROCK has developed a unique and proprietary business system for providing a full-service restaurant that offers Australia-style rock cooking where certain menu items are cooked on a hot volcanic rock at the customer's table, as well as a diverse menu offering steaks, seafood, pasta, burgers,

soup, salads, and beverages on a dine-in and take-out basis (the "Business System").

14. BLACK ROCK provides its unique services to the general public through authorized franchisees that meet BLACK ROCK's qualifications to be awarded a BLACK ROCK franchise, which all together make up BLACK ROCK's franchise system (the "Franchise System"). These authorized franchisees each feature: (1) distinctive signage, interior and exterior design, décor, and color scheme; (2) special recipes and menu items, including proprietary products and ingredients; (3) uniform standards, specifications, and procedures for operations; (4) quality and uniformity of products and services offered; (5) inventory, management, and financial control procedures (including point of purchase and tracking systems); (6) training and assistance; and (7) advertising and promotional programs.

15. To ensure the quality of services provided by its authorized franchisees, BLACK ROCK, among other things, provides its authorized franchisees: (1) uniform standards and operational procedures for all BLACK ROCK restaurants; (2) the standards for presentation and use of the Marks (as defined below) in conjunction with the Business System; (3) initial and ongoing training concerning the operation of BLACK ROCK restaurants; and (4) ongoing operational support and assistance to its franchisees.

16.    BLACK ROCK owns and has exclusive rights to certain trade names, trademarks, service marks, logos, symbols, proprietary marks, and other indicia of origin, including but not limited to BLACK ROCK's federally registered service mark "*BLACK ROCK*" (Registration No. 5,336,550) (the "Marks").

17.    BLACK ROCK has built substantial goodwill in the Marks through years of exclusive use of the Marks in connection with its full-service restaurants.

18.    The Franchise System relies on each authorized franchisee operating in accordance with BLACK ROCK's rules, such as running BLACK ROCK's full-service restaurant in a first-class manner, coordinating marketing efforts, full and consistent operation of the Business System, and each franchisee being held to the same competitive standards.

19.    The Franchise System is undermined when one franchisee decides to abandon its operation of a restaurant and then continues to use the Marks in the geographic market after termination of its Franchise Agreement.

20.    BLACK ROCK has spent, and spends, considerable resources, time, and effort on ongoing development, promotion, and servicing of the Franchise System and its Marks.

21.    In addition, BLACK ROCK has made substantial investments in promotional and marketing campaigns designed to create a strong brand and image on behalf of itself and its authorized franchisees.

22.     As a result of BLACK ROCK's efforts, BLACK ROCK has created substantial goodwill for BLACK ROCK and its franchisees in multiple regions of the United States, including in the State of Florida. The Franchise System and Marks have become associated in the minds of consumers as providing the highest standards of quality in the operation of a full-service restaurant.

## THE FRANCHISE AGREEMENT

23.     Under the Franchise Agreement, BLACK ROCK granted BR CORAL SPRINGS a nonexclusive right and license to operate a BLACK ROCK restaurant in Coral Springs, Florida, with a physical location of 2554 N. University Drive, Coral Springs, Florida 33065 (the "Location").

24.     The Franchise Agreement authorized BR CORAL SPRINGS to use BLACK ROCK's Marks and Business System in connection with its BLACK ROCK restaurant in Coral Springs, Florida.

25.     BR CORAL SPRINGS's use of BLACK ROCK's Marks was expressly conditioned upon its compliance with the Franchise Agreement.

26.     Under Section 4.2 of the Franchise Agreement, BR CORAL SPRINGS agreed to pay a weekly royalty fee ("Royalty") to BLACK ROCK throughout the term of the Franchise Agreement.

27.     Under Section 4.3 of the Franchise Agreement, BR CORAL SPRINGS further agreed to pay a weekly fee to BLACK ROCK's Brand

Development Fund ("Brand Development Fee") throughout the term of the Franchise Agreement.

28.    BR CORAL SPRINGS authorized BLACK ROCK to collect such Royalties and Brand Development Fees by means of Electronic Funds Transfer ("EFT").

29.    Under Section 9.3.1 of the Franchise Agreement, BR CORAL SPRINGS agreed that it shall not use the Marks as part of its corporate or other legal name; provided however, that BR CORAL SPRINGS agreed that it may use the corporate name "BLACK ROCK CORAL SPRINGS, LLC," so long as immediately upon the date of termination of the Franchise Agreement, BR CORAL SPRINGS shall immediately change its corporate or other legal name immediately upon the date of termination of the Franchise Agreement.

30.    BR CORAL SPRINGS further agreed under Section 9.3.1 of the Franchise Agreement, that if it failed to change its corporate or other legal name immediately upon the date of termination of the Franchise Agreement, it shall incur a One Thousand and 00/100 Dollars ($1,000.00) per day licensing fee ("Licensing Fee") for each day after termination that it fails to change its corporate or legal name.

31.    BR CORAL SPRINGS further agreed under Section 9.3.1 of the Franchise Agreement, that if it failed to change its corporate or other legal name

within thirty (30) days of the date of termination of the Franchise Agreement, it shall agree and admit that its continued use of the Marks in its corporate or other legal name shall be considered trademark infringement, intentional use with knowledge, and it further acknowledges that BLACK ROCK is entitled to all rights and remedies available to BLACK ROCK, including without limitation, injunctive or other equitable relief, treble damages, and attorneys' fees under the Lanham Act, as well as other rights and remedies in law or equity.

32.     Under Section 17.1.3(e) of the Franchise Agreement, BR CORAL SPRINGS agreed that if it, at any time, ceased to operate or otherwise abandon the restaurant, such cease of operation or abandonment shall be considered a default under the Franchise Agreement with no opportunity to cure, and Black Rock may terminate the Franchise Agreement at its option.

33.     Under Article 18 of the Franchise Agreement, BR CORAL SPRINGS agreed to comply with certain post-termination obligations. These obligations require BR CORAL SPRINGS to take the following actions upon termination:

a.      Immediately cease to operate the restaurant under the Franchise Agreement, and BR CORAL SPRINGS shall not directly or indirectly represent to the public or hold itself out as a present or former franchisee of BLACK ROCK;

b.     Immediately and permanently cease to use, in any manner whatsoever, any confidential methods, computer software, procedures, and techniques associated with the Business System, the mark "Black Rock Bar & Grill," and all other Marks and distinctive forms, slogans, signs, symbols, and devices associated with the Business System. In particular, BR CORAL SPRINGS shall cease to use, without limitation, all signs, advertising materials, displays, stationery, forms and other articles which may display the Marks, and shall immediately change all paint colors and remove all of BLACK ROCK's proprietary or non-proprietary design items.

c.     Immediately take such action as may be necessary to cancel any assumed name or equivalent registration which contains the mark "Black Rock Bar & Grill" or any other service mark or Marks, and BR CORAL SPRINGS shall furnish BLACK ROCK with evidence satisfactory to BLACK ROCK of compliance with this obligation within five (5) days after termination of the Franchise Agreement.

d.     In the event BR CORAL SPRINGS continues to operate or subsequently begins to operate any other business, BR CORAL SPRINGS agreed not to use any reproduction, counterfeit, copy, or colorable imitation of the Marks, either in connection with such other business or the promotion thereof, which is likely to cause confusion, mistake, or deception, or which

is likely to dilute BLACK ROCK's rights in and to the Marks, and BR CORAL SPRINGS further agreed not to utilize any designation of origin or description or representation which falsely suggests or represents an association or connection with BLACK ROCK constituting unfair competition.

e.      Promptly pay all sums owing to BLACK ROCK. Such sums shall include all damages, costs, and expenses, including reasonable attorneys' fees, incurred by BLACK ROCK as a result of any default by BR CORAL SPRINGS, which obligation shall give rise to and remain, until paid in full, a lien in BLACK ROCK's favor against any and all of the personal property, furnishings, equipment, fixtures, and inventory owned by BR CORAL SPRINGS, and on the premises operated under the Franchise Agreement at the time of default.

f.      Promptly pay to BLACK ROCK all damages, costs, and expenses, including reasonable attorneys' fees, incurred by BLACK ROCK in connection with obtaining any remedy available to BLACK ROCK for any violation of the Franchise Agreement, and subsequent to the termination of the Franchise Agreement, in obtaining injunctive or other relief for the enforcement of any provisions of Article 18 in the Franchise Agreement.

g.      Immediately deliver to BLACK ROCK all manuals, software licensed by BLACK ROCK (if any), records, files, instructions, correspondence, all materials related to operating the restaurant, including, without limitation, agreements, invoices, and any and all other materials relating to the operation of the restaurant in BR CORAL SPRINGS's possession or control, and all copies thereof (all of which are acknowledged to be BLACK ROCK's property), and shall retain no copy or record of any of the foregoing, except BR CORAL SPRINGS's copy of the Franchise Agreement and of any correspondence between the parties and any other documents which BR CORAL SPRINGS reasonably needs for compliance with any provision of law.

h.      Continue to comply with the restrictions on confidential information contained in Article 10 of the Franchise Agreement and shall also comply with the non-competition covenants contained in Article 10 of the Franchise Agreement. Any other person required to execute similar covenants pursuant to Article 10 of the Franchise Agreement shall also comply with such covenants.

i.      Immediately furnish BLACK ROCK with an itemized list of all advertising and sales promotion materials bearing the Marks or any of BLACK ROCK's distinctive markings, designs, labels, or other marks

thereon, whether located on BR CORAL SPRINGS's Location or under BR CORAL SPRINGS's control at any other location.

34.    Under Section 18.16 of the Franchise Agreement, BR CORAL SPRINGS agreed that it must pay BLACK ROCK liquidated damages, equal to the average value of Royalties paid or owed (per month) to BLACK ROCK during the twelve (12) months before the termination of the Franchise Agreement multiplied by: (1) twenty-four (24), being the number of months in two (2) full years, or (2) the number of months remaining during the term of the Franchise Agreement, whichever is less.

35.    Under Section 19.15 of the Franchise Agreement, the Principals agreed that all acknowledgements, promises, covenants, agreements, and obligations made or undertaken by BR CORAL SPRINGS in the Franchise Agreement shall be deemed joint and several, and undertaken by the Principals.

36.    Under the Personal Guaranty, 7TH BITE and Mr. Samson each, jointly and severally, personally guaranteed all of BR CORAL SPRINGS's obligations under the Franchise Agreement.

**TERMINATION OF THE FRANCHISE AGREEMENT**

37.    On December 5, 2023, BR CORAL SPRINGS ceased operations and abandoned the Location.

38.    On December 15, 2023, BLACK ROCK sent a Notice of Default With No Opportunity to Cure and Termination of the Franchise Agreement (the "Notice of Default and Termination") to BR CORAL SPRINGS, Mr. Samson, and Mr. Strems notifying them of their material default, with no opportunity to cure, under the Franchise Agreement. BR CORAL SPRINGS's abandonment of the Location constituted as a material default, with no opportunity to cure, under the Franchise Agreement. The Notice of Default and Termination terminated the Franchise Agreement. A true and correct copy of the Notice of Default and Termination is attached hereto as **Exhibit D**.

39.    The Notice of Default and Termination set forth BR CORAL SPRINGS's, 7TH BITE's, Mr. Samson's, FRANCHISE HOLDINGS's, and Mr. Strems's respective post-termination obligations.

40.    The Notice of Default and Termination also demanded payment of all past-due fees owed by BR CORAL SPRINGS to BLACK ROCK under the Franchise Agreement, as well as liquidated damages as partial compensation for lost future Royalties under the Franchise Agreement. The Notice of Default and Termination reminded BR CORAL SPRINGS of its obligations under Section 9.3.1 of the Franchise Agreement, to change BR CORAL SPRINGS corporate or other legal name, as well as the agreed upon penalties for its failure to do so.

## CONDUCT GIVING RISE TO VIOLATIONS OF LAW

41.    To date, the Defendants have refused to comply with their respective post-termination obligations under the Franchise Agreement and the Personal Guaranty.

42.    Following the termination of the Franchise Agreement, Defendants have refused to pay BLACK ROCK past-due Royalties and Brand Development Fees or liquidated damages, all of which were freely agreed to by Defendants.

43.    Defendants continue to maintain the active business entity "BLACK ROCK CORAL SPRINGS, LLC," despite termination of the Franchise Agreement. An internet screenshot of the State of Florida's Division of Corporations's website showing the entity "BLACK ROCK CORAL SPRINGS, LLC" in "Active" status is attached hereto as **Exhibit E**.

44.    To date, the Principals have refused to comply with their respective obligations under the Franchise Agreement to jointly and severally undertake all the obligations taken by BR CORAL SPRINGS under the Franchise Agreement.

45.    To date, 7TH BITE and Mr. Samson have refused to comply with their respective obligations to BLACK ROCK under the Personal Guaranty.

46.    Defendants' non-compliance with the Franchise Agreement and the Personal Guaranty has caused and continues to cause significant damage to BLACK ROCK and the Franchise System.

<u>**COUNT I**</u>
**FEDERAL TRADEMARK INFRINGEMENT**

47.    BLACK ROCK re-alleges each and every allegation set forth in paragraphs 1 through 46 of this Complaint as if fully restated herein.

48.    BLACK ROCK was granted federal registrations for the Marks listed in Paragraph 16 of this Complaint and owns same.

49.    Since registration, BLACK ROCK has extensively advertised the Marks in connection with its franchised full-service restaurant business.

50.    The Franchise Agreement provides that Defendants' right to use the Marks ended immediately upon termination of the Franchise Agreement.

51.    The Notice of Default and Termination instructed Defendants to comply with their post-termination obligations and cancel its corporate or other legal name and any assumed name or equivalent registration which contains any Marks or parts of Marks or any other name, service mark, or trademark of BLACK ROCK and immediately cease use of BLACK ROCK's Marks.

52.    To date, Defendants continue to use BLACK ROCK's Marks in commerce and maintain the registered business name "BLACK ROCK CORAL SPRINGS, LLC" despite the termination of the Franchise Agreement.

53.    Defendants' continued registration, maintenance, and use of "BLACK ROCK CORAL SPRINGS, LLC" after termination of the Franchise Agreement, as

agreed upon by BR CORAL SPRINGS under Section 9.3.1 of the Franchise Agreement, constitutes an effort to dilute, destroy, "palm off," and appropriate to Defendants the goodwill, trade name, trademarks and service marks of BLACK ROCK. Defendants' conduct infringes on BLACK ROCK's trademark rights, all in violation of Section 32(1) of the Lanham Act, 15 U.S.C. § 1114.

54.     Defendants' continued registration, maintenance, and use of "BLACK ROCK CORAL SPRINGS, LLC" after termination of the Franchise Agreement, as agreed upon by BR CORAL SPRINGS under Section 9.3.1 of the Franchise Agreement, is highly likely to confuse the consuming public into thinking that Defendants are associated with BLACK ROCK, as well as cause damage to the BLACK ROCK Marks.

55.     Defendants' use of BLACK ROCK's Marks after termination of the Franchise Agreements, as agreed upon by BR CORAL SPRINGS under Section 9.3.1 of the Franchise Agreement, constitutes willful and intentional infringement in violation of Section 32(1) of the Lanham Act, 15 U.S.C. § 1114.

56.     Defendants are using BLACK ROCK's exact Marks, or reproduction, counterfeit, copy, colorable, or confusingly similar variations thereof, with full knowledge that BLACK ROCK owns the Marks and has obtained federal registrations for the Marks.

57.     BLACK ROCK has been damaged and continues to be harmed as a result of the Defendants' willful and intentional infringement of BLACK ROCK's Marks.

58.     Pursuant to Section 35(a) of the Lanham Act, 15 U.S.C. § 1117(a), BLACK ROCK is entitled to actual damages, plus BLACK ROCK's costs, disbursements and attorneys' fees incurred.

59.     Because Defendants' infringement of BLACK ROCK's Marks is willful and intentional, as agreed upon by BR CORAL SPRINGS under Section 9.3.1 of the Franchise Agreement, BLACK ROCK is also entitled to treble damages and attorneys' fees pursuant to 15 U.S.C. § 1117(b).

<u>COUNT II</u>
**COMMON LAW TRADEMARK INFRINGEMENT**

60.     BLACK ROCK re-alleges each and every allegation set forth in paragraphs 1 through 59 of this Complaint as if fully restated herein.

61.     BLACK ROCK was granted valid federal registrations for the Marks listed in Paragraph 16 of this Complaint.

62.     BLACK ROCK has priority in the Marks listed in Paragraph 16 of this Complaint and owns same.

63.     Since registration, BLACK ROCK has extensively advertised the Marks in connection with its franchised full-service restaurant business.

64.   The Franchise Agreement provides that Defendants' right to use the Marks ended immediately upon termination of the Franchise Agreement.

65.   The Notice of Default and Termination instructed Defendants to comply with their post-termination obligations and cancel its corporate or other legal name and any assumed name or equivalent registration which contains any Marks or parts of Marks or any other name, service mark, or trademark of BLACK ROCK and immediately cease use of BLACK ROCK's Marks.

66.   To date, Defendants continue to use BLACK ROCK's Marks in commerce and maintain the registered business name "BLACK ROCK CORAL SPRINGS, LLC" despite the termination of the Franchise Agreement.

67.   Defendants' continued registration, maintenance, and use of "BLACK ROCK CORAL SPRINGS, LLC" after termination of the Franchise Agreement, as agreed upon by BR CORAL SPRINGS under Section 9.3.1 of the Franchise Agreement, is highly likely to confuse the consuming public into thinking that Defendants are associated with BLACK ROCK, as well as cause damage to the BLACK ROCK Marks.

68.   Defendants' use of BLACK ROCK's Marks after termination of the Franchise Agreements, as agreed upon by BR CORAL SPRINGS under Section 9.3.1 of the Franchise Agreement, constitutes willful and intentional trademark infringement.

69.     Defendants are using BLACK ROCK's exact Marks, or reproduction, counterfeit, copy, colorable, or confusingly similar variations thereof, with full knowledge that BLACK ROCK owns the Marks and has obtained federal registrations for the Marks.

70.     BLACK ROCK has been damaged and continues to be harmed as a result of the Defendants' willful and intentional infringement of BLACK ROCK's Marks.

## COUNT III
## BREACH OF FRANCHISE AGREEMENT

71.     BLACK ROCK re-alleges each and every allegation set forth in paragraphs 1 through 70 of this Complaint as if fully restated herein.

72.     Defendants owed a duty under Section 4.2 of the Franchise Agreement to pay Royalties to BLACK ROCK and breached same by failing to pay said Royalties.

73.     Defendants owed a duty under Section 4.3 of the Franchise Agreement to pay Brand Development Fees to BLACK ROCK and breached same by failing to pay said Brand Development Fees.

74.     Defendants owed a duty under Section 9.3.1 of the Franchise Agreement to change BR CORAL SPRINGS corporate or other legal name immediately upon the date of termination of the Franchise Agreement and

breached same by failing to change BR CORAL SPRINGS' corporate or other legal name.

75.    Defendants owed a duty under Section 9.3.1 of the Franchise Agreement to pay BLACK ROCK the Licensing Fee for each day after termination that BR CORAL SPRINGS failed to change its corporate or legal name and has breached same by failing to pay the Licensing Fee.

76.    Defendants owed a duty under Section 17.1.3(e) of the Franchise Agreement to maintain the Location and breached same when they abandoned the Location.

77.    Defendants owed a duty under Section 18.2 of the Franchise Agreement by, including without limitation, immediately and permanently ceasing to use BLACK ROCK's Marks and breached same by continuing the use of BLACK ROCK's Marks.

78.    Defendants owed a duty under Section 18.3 of the Franchise Agreement to cancel any assumed name or equivalent registration which contains the BLACK ROCK Marks and breached same by failing to cancel any assumed name or equivalent registration which contains BLACK ROCK Marks.

79.    Defendants owed a duty under Section 18.5 of the Franchise Agreement to promptly pay all sums owing to BLACK ROCK, including all damages, costs and expenses, including reasonable attorneys' fees, incurred by

BLACK ROCK as a result of Defendants multiple breaches of the Franchise Agreement, and breached same by failing to pay all such sums.

80.     Defendants owed a duty under Section 18.6 of the Franchise Agreement to promptly pay BLACK ROCK all damages, costs and expenses, including reasonable attorneys' fees, incurred by BLACK ROCK in connection with obtaining remedies available to BLACK ROCK as a result of Defendants multiple breaches of the Franchise Agreement and breached same by failing to pay all such sums.

81.     Defendants owed a duty under Section 18.16 of the Franchise Agreement to promptly pay BLACK ROCK liquidated damages as a result of Defendants multiple breaches of the Franchise Agreement and breached same by failing to pay all such sums.

82.     The Principals owed a duty under Section 19.15 of the Franchise Agreement to undertake BR CORAL SPRINGS's obligations, jointly and severally, under the Franchise Agreement and breached same by failing to fulfill BR CORAL SPRINGS's obligations.

83.     To date, Defendants have failed to pay BLACK ROCK any past dues, late fees, the Licensing Fee, liquidated damages, interest, and attorneys' fees owed to BLACK ROCK under the Franchise Agreement.

84.    To date, BR CORAL SPRINGS continues to maintain the registered business name "BLACK ROCK CORAL SPRINGS, LLC."

85.    Defendants' failures to 1) pay Royalties; 2) pay Brand Development Fees; 3) pay BLACK ROCK all past due fees and liquidated damages; 4) cancel BR CORAL SPRINGS registered business name; and 5) pay BLACK ROCK the Licensing Fee, constitute breaches of the Franchise Agreement.

86.    As a direct and proximate result of Defendants' respective breaches of the Franchise Agreement, BLACK ROCK has been and continues to be damaged.

87.    Pursuant to Section 18.5, Section 18.6, and Section 19.24 of the Franchise Agreement, BLACK ROCK is also entitled to the recovery of its attorneys' fees in the enforcement of its rights under the Franchise Agreement.

## COUNT IV
## BREACH OF PERSONAL GUARANTY

88.    BLACK ROCK re-alleges each and every allegation set forth in paragraphs 1 through 87 of this Complaint as if fully restated herein.

89.    Pursuant to Section 4 of the Personal Guaranty, 7TH BITE and Mr. Samson each agreed and therefore had a duty to jointly and severally, unconditionally, and irrevocably guarantee all of BR CORAL SPRINGS's obligations under the Franchise Agreement.

90.     7TH BITE and Mr. Samson each further agreed under Section 4 and upon default by BR CORAL SPRINGS that each owed BLACK ROCK a duty to immediately make each payment and perform each obligation required from BLACK ROCK under the Franchise Agreement.

91.     7TH BITE and Mr. Samson each further agreed under Section 4 and granted BLACK ROCK the right to pursue enforcement of the Franchise Agreement against 7TH BITE or Mr. Samson, jointly and severally, without first exhausting its remedies against BR CORAL SPRINGS.

92.     7TH BITE and Mr. Samson jointly and severally breached their obligations under the Personal Guaranty by failing to render payment of the Royalties owed to BLACK ROCK under the Franchise Agreement.

93.     7TH BITE and Mr. Samson jointly and severally breached their obligations under the Personal Guaranty by failing to render payment of the Brand Development Fees owed to BLACK ROCK under the Franchise Agreement.

94.     7TH BITE and Mr. Samson jointly and severally breached their obligations under the Personal Guaranty by failing to pay sums owing to BLACK ROCK, including all damages, costs and expenses, including reasonable attorneys' fees, incurred by BLACK ROCK as a result of the respective breaches of the Franchise Agreement.

95.     7TH BITE and Mr. Samson jointly and severally breached their obligations under the Personal Guaranty by failing to pay all damages, costs and expenses, including reasonable attorneys' fees, incurred by BLACK ROCK in connection with obtaining remedies available to BLACK ROCK as a result of the respective breaches of the Franchise Agreement.

96.     7TH BITE and Mr. Samson jointly and severally breached their obligations under the Personal Guaranty by failing to promptly pay BLACK ROCK liquidated damages as a result of the respective breaches of the Franchise Agreement.

97.     7TH BITE and Mr. Samson jointly and severally breached their obligations under the Personal Guaranty by failing to pay BLACK ROCK the Licensing Fee for each day after termination that BR CORAL SPRINGS failed to change its corporate or legal name.

98.     7TH BITE and Mr. Samson jointly and severally breached their obligations under the Personal Guaranty by failing to cancel BR CORAL SPRINGS's registered business name.

99.     7TH BITE and Mr. Samson jointly and severally breached their obligations under the Personal Guaranty by failing to immediately and permanently ceasing to use BLACK ROCK's Marks.

100.   7TH BITE's and Mr. Samson's joint and several failures outlined above constitute respective breaches of the Personal Guaranty.

101.   As a direct and proximate result of 7TH BITE's and Mr. Samson's joint and several breaches of the Personal Guaranty, BLACK ROCK has been and continues to be damaged.

## **PRAYER FOR RELIEF**

WHEREFORE, BLACK ROCK respectfully asks that this Court grant it the following relief:

1.   An award of damages in the amount of all the past due fees, the sum of the accruing Licensing Fee, liquidated damages, interest, and attorneys' fees owed by Defendants to BLACK ROCK under the Franchise Agreement, due to the premature termination of the Franchise Agreement, and all other damages resulting from the Defendants' respective breaches of the Franchise Agreement and 7TH BITE's and Mr. Samson's respective breaches of the Personal Guaranty;

2.   An award of actual damages to BLACK ROCK for violations of the Lanham Act under Section 35(a) of the Lanham Act, 15 U.S.C. § 1117(a); provided, BLACK ROCK reserves its rights under Section

35(c) of the Lanham Act. 15 U.S.C. § 1117(c) to seek Statutory Damages at any time prior to final judgement;

3. An award of treble damages to BLACK ROCK under Section 35(b) of the Lanham Act, 15 U.S.C. § 1117(b);

4. An award of actual damages to BLACK ROCK for trademark infringement violations under Michigan common law;

5. BLACK ROCK's costs, disbursements, costs of investigation and attorneys' fees incurred in this action; and

6. Any other and further relief as this Court deems just and appropriate.

Respectfully submitted,

Dated: February 15, 2024        By: _____

Mark J. Burzych (P43793)
Eric P. Conn (P64500)
James A. Budreau (P85671)
*Fahey Schultz Burzych Rhodes PLC*
4151 Okemos Road
Okemos, MI   48864
(517) 381-0100
mburzych@fsbrlaw.com
econn@fsbrlaw.com
jbudreau@fsbrlaw.com