UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

SIZZLING BLACK ROCK STEAK
HOUSE FRANCHISING, INC.,

       Plaintiff,

Civil Case No. 24-cv-10380

v.

HON. MARK A. GOLDSMITH

BLACK ROCK CORAL SPRINGS,
LLC, et al.,

       Defendants.
_____/

**OPINION & ORDER DENYING DEFENDANTS' MOTION TO DISMISS (Dkt. 42)**

Plaintiff Sizzling Black Rock Steak House Franchising, Inc. (Sizzling Black Rock) brings this action against Defendants Black Rock Coral Springs, LLC; 7th Bite of the Apple, LLC; Franchise Holdings, LLC; Paul Samson; and Scot Strems. Sizzling Black Rock alleges both federal and common-law trademark infringement, as well as breach of the franchise agreement against all Defendants. The Court entered a default judgment against Black Rock Coral Springs (Dkt. 39). 7th Bite of the Apple and Paul Samson (the Samson Defendants) answered the amended complaint (Dkts. 31, 32). Before the Court is the motion to dismiss filed by Franchise Holdings and Scot Strems (the Strems Defendants) (Dkt. 42).[1] For the reasons that follow, the Court denies the motion.

---

[1] Because oral argument will not aid the Court's decisional process, the motion will be decided based on the parties' briefing. See E.D. Mich. LR 7.1(f)(2); Fed. R. Civ. P. 78(b). In addition to the motion, the briefing also includes Sizzling Black Rock's response (Dkt. 44) and the Strems Defendants' reply (Dkt. 45).

1

I.      **BACKGROUND**

Sizzling Black Rock is the franchisor of Sizzling Black Rock Steakhouse restaurants. Am. Compl. ¶¶ 24–29 (Dkt. 26). It is a Michigan corporation and maintains its headquarters and principal place of business in Michigan. Id. ¶ 7. Franchise Holdings is a Florida limited liability company that maintains its principal place of business in Florida. Id. ¶ 11. Strems is the sole member of Franchise Holdings. Id. Franchise Holdings is the majority owner of Black Rock Coral Springs. Id. ¶ 8; Operating Agreement at PageID.617 (Dkt. 26-2). The remaining interest in Black Rock Coral Springs is owned by 7th Bite of the Apple, which is wholly owned by Samson. Am. Compl. ¶¶ 8, 9; Operating Agreement at PageID.617.

In September and October of 2021, Sizzling Black Rock gave copies of a franchise disclosure document to both the Samson Defendants and the Strems Defendants. Am. Compl. ¶¶ 13–14. Samson and Strems both signed the receipt on the franchise disclosure document, acknowledging the disclosure. Id. This franchise disclosure document disclosed the terms of the franchise agreement Sizzling Black Rock intended to enter into with Black Rock Coral Springs.

On January 25, 2022, Sizzling Black Rock and Black Rock Coral Springs entered into the franchise agreement, pursuant to which Black Rock Coral Springs would operate a full-service restaurant franchise in Coral Springs, Florida. Id. ¶ 15; see Franchise Agreement at PageID.713–772 (Dkt. 26-3). The franchise agreement defines all four members of Black Rock Coral Springs as "principals" for the franchisee. Franchise Agreement at PageID.713. Samson—but not Strems—executed the franchise agreement on behalf of Black Rock Coral Springs, which was identified as the "franchisee." Franchise Agreement at PageID.772. On the same day, both Samson and Strems signed attachments to the franchise agreement: (i) a statement of ownership, Am. Compl. ¶ 17, Franchise Agreement at PageID.840–841; (ii) a confidentiality and non-

2

competition agreement, Am. Compl. ¶ 19, Franchise Agreement at PageID.864–875; and (iii) a franchise acknowledgement statement, Am. Compl. ¶ 20, Franchise Agreement at PageID.882–884. The Samson Defendants, but not the Strems Defendants, also executed a personal guaranty obligating them to personally and jointly and severally guarantee Black Rock Coral Springs's performance under the franchise agreement. Am. Compl. ¶ 50.

On December 5, 2023, Defendants abandoned operations of their restaurant franchise. Id. ¶ 51. Ten days later, Sizzling Black Rock sent a notice of default and termination to Defendants, notifying them of their material default under the franchise agreement. Id. ¶ 52. The notice laid out Defendants' post-termination obligations, which included paying Sizzling Black Rock past-due fees and liquidated damages and changing Black Rock Coral Springs's corporate name to remove Sizzling Black Rock's trademark. Id. ¶¶ 52–54. Sizzling Black Rock alleges that Defendants have failed to comply with these post-termination obligations.

Based on Defendants' alleged failure to comply with their post-termination obligations, Sizzling Black Rock brings federal and common-law trademark claims, as well as a claim for breach of franchise agreement. The Strems Defendants have moved to dismiss the claims against them, arguing that (i) Michigan's statute of frauds prevents the enforcement of the franchise agreement against them, (ii) the Court does not have personal jurisdiction over them, and (iii) Sizzling Black Rock has failed to allege their claims against them.

The Court begins by finding that Sizzling Black Rock has sufficiently alleged that the Court possesses personal jurisdiction over the Strems Defendants. The Court next finds that Michigan's Statute of Frauds does not bar this action. Finally, the Court addresses each of Sizzling Black Rock's claims in turn, finding that its allegations supporting each claim suffice at the motion to dismiss stage.

## II. ANALYSIS

### A. Personal Jurisdiction

"A court may exercise its power only over defendants subject to personal jurisdiction in the court's state." AMB Media, LLC v. OneMB, LLC, No. 23-5607, 2024 WL 2052151, at *2 (6th Cir. May 8, 2024). In deciding a challenge to personal jurisdiction, a court can choose to (i) decide the motion on the pleadings and affidavits, (ii) permit jurisdictional discovery, or (iii) conduct an evidentiary hearing to resolve factual disputes. Theunissen v. Matthews, 935 F.2d 1454, 1458–1459 (6th Cir. 1991). The Court has not ordered jurisdictional discovery or conducted an evidentiary hearing, so it proceeds according to the first option. At the motion to dismiss stage where a court rules just on the pleadings and affidavits, "the jurisdictional burden is relatively slight—the plaintiff need only make a prima facie showing that personal jurisdiction exists." AMB Media, LLC, 2024 WL 2052151, at *2 (punctuation modified). Courts consider pleadings "in a light most favorable to the plaintiff and do not weigh the controverting assertions of the party seeking dismissal." Id. (punctuation modified). Sizzling Black Rock's allegations meet this lenient standard.

"Personal jurisdiction can be general or specific." Sullivan v. LG Chem, Ltd., 79 F.4th 651, 660 (6th Cir. 2023). Sizzling Black Rock makes arguments that the Court can exercise both kinds of personal jurisdiction over the Strems Defendants here. See Resp. at 10–14. In Michigan, courts have general jurisdiction over individuals and corporations that consent to be sued in Michigan. Mich. Comp. L. §§ 600.701(3), 600.711(2); see also Sports Auth. Mich., Inc. v. Justballs, Inc., 97 F. Supp.2d 806, 810 (E.D. Mich. 2000) ("In Michigan, courts have general jurisdiction over a corporation when it . . . consents to be sued in Michigan[.]"). Sizzling Black Rock invokes that basis.

4

Its first argument in favor of exercising personal jurisdiction over the Strems Defendants is based on Section 19.8 of the franchise agreement, which states:

> With respect to any claims, controversies or disputes which are not finally resolved through mediation or arbitration, or as otherwise provided above, you and the Principals hereby irrevocably submit themselves to the jurisdiction of the state courts of Michigan and the Federal District Court nearest to our headquarters. You and the Principals hereby waive all questions of personal jurisdiction for the purpose of carrying out this provision. . . . With respect to all claims, controversies, disputes, or actions, related to this Agreement or the relationship created thereby, this Agreement and any such related claims, controversies, disputes or actions, related to this Agreement or the relationship created thereby, this Agreement and any such related claims, controversies, disputes or actions shall be governed, enforced and interpreted under Michigan law.

Franchise Agreement at PageID.763. Sizzling Black Rock argues that, as parties to the franchise agreement, the Strems Defendants have thus consented to this Court's general jurisdiction pursuant to §§ 600.701(3), 600.711(2). Resp. at 10–12.

The Strems Defendants do not dispute the meaning of this provision. Rather, they argue that they have not consented to jurisdiction pursuant to Section 19.8 of the franchise agreement, as they did not sign the franchise agreement. See Mot. at 14–17. This argument gets to the heart of the disagreement of the parties regarding this lawsuit: whether the Strems Defendants can be said to be parties to the franchise agreement.

"The cardinal rule in the interpretation of contracts is to ascertain the intention of the parties." City of Grosse Pointe Park v. Mich. Municipal Liability & Prop. Pool, 702 N.W.2d 106, 113 (Mich. 2005). "Under Michigan law, '[b]efore a contract can be completed, there must be an offer and acceptance.'" Hergenreder v. Bickford Senior Living Grp, LLC., 656 F.3d 411, 417 (6th Cir. 2011) (quoting Pakideh v. Franklin Commercial Mortg. Grp., Inc., 540 N.W.2d 777, 780 (Mich. Ct. App. 1995)). "An offer is defined as the manifestation of willingness to enter into a bargain, so made as to justify another person in understanding that his assent to that bargain is

5

invited and will conclude it." Id. (quoting Kloian v. Domino's Pizza L.L.C., 733 N.W.2d 766, 770 (Mich. Ct. App. 2006)). "Similarly, 'an acceptance sufficient to create a contract arises where the individual to whom an offer is extended manifests an intent to be bound by the offer, and all legal consequences flowing from the offer, through voluntarily undertaking some unequivocal act sufficient for that purpose.'" Id. (quoting Kloian, 733 N.W.2d at 771). "When considering whether a contract has been formed, failure by one or both parties to sign a written agreement . . . is not necessarily fatal to a party's assertion that a contract was formed," as "mutuality or assent . . . may be shown in other ways." Lowry v. Lauren Bienenstock & Assocs Inc., 2014 WL 7338880, at *2 (Mich. Ct. App. Dec. 23, 2014). In Lowry, the court found a contract had been formed even where the defendant did not sign it, noting that the defendant had accepted delivery of the agreements as signed by plaintiff and had performed its terms. Id.

The Court finds that there are sufficient allegations at this point in the case to find that the Strems Defendants "manifest[ed] an intent to be bound" by the franchise agreement. Sizzling Black Rock alleges that the Strems Defendants signed a receipt acknowledging that they received the franchise disclosure agreement in October 2021, Am. Compl. ¶ 14, meaning they were aware of the franchise agreement at that point. The introductory paragraph to the franchise agreement states that the agreement "is made and entered into . . . between:" i) "Sizzling Black Rock Steak House Franchising, Inc.," ii) "Black Rock Coral Springs, LLC," iii) "7th Bite of the Apple, LLC," iv) "Franchise Holdings, LLC," v) "Paul Samson," and vi) "Scot Strems." Franchise Agreement at PageID.713. The same paragraph defines Franchise Holdings and Strems, collectively as "Principal(s)." Id. The same paragraph also states that "Black Rock Coral Springs, LLC and the Principal(s) shall be collectively referred to in this Agreement as the 'Franchisee,' 'you,' and 'your.'" Id.

On January 25, 2022, the same day that the Samson Defendants signed the franchise agreement on behalf of the franchisee, the Strems Defendants executed attachments to the agreement. Id. at PageID.840–841, PageID.864–875, PageID.882–884. One of the attachments—the statement of ownership interests—required Strems to sign that he "represents and warrants that he will not authorize another member to join Franchise Holdings, LLC without following the transfer provisions of the Franchise Agreement. Id. at PageID.864–875. And another attachment—the franchisee acknowledgement statement—required both Samson and Strems to initial each paragraph following the statement "Franchisee hereby acknowledges the following:" Id. at PageID.882–884.

These facts are sufficient, at the motion to dismiss stage, for Sizzling Black Rock to have successfully alleged that the Strems Defendants "manifest[ed] an intent to be bound" by the franchise agreement.

Further, for purposes of assessing personal jurisdiction, "[w]here the disputed jurisdictional facts are intimately intertwined with the parties' dispute on the merits, a trial court should not require plaintiffs to mount proof which would, in effect, establish the validity of their claims and their right to the relief sought." Serras v. First Tenn. Bank Nat. Ass'n, 875 F.2d 1212, 1215 (6th Cir. 1989) (punctuation modified). Thus, at this stage of the case, Sizzling Black Rock may rely on the franchise agreement governing law and forum selection clause to establish personal jurisdiction. See H&H Wholesale Servs., Inc. v. Kamstra Int'l, B.V., 373 F. Supp. 3d 826, 841 (E.D. Mich. 2019).

Because the Court finds that it can exercise general personal jurisdiction over the Strems Defendants based on the consent provision in the franchise agreement, it need not reach Sizzling

Black Rock's argument that it could also exercise limited personal jurisdiction over the Strems Defendants.

B.  **Statute of Frauds**

The Strems Defendants also argue that Sizzling Black Rock's claims against them are barred by Michigan's statute of frauds. See Mot. at 8–9. They cite Mich. Compl. L. § 566.132(1)(b), which provides:

> (1) In the following cases an agreement, contract, or promise is void unless that agreement, contract, or promise, or a note or memorandum of the agreement, contract, or promise, is in writing and signed with an authorized signature by the party to be charged with the agreement, contract, or promise:
> …
> (b) A special promise to answer for the debt, default, or misdoings of another person.

Because the Strems Defendants did not sign the franchise agreement and did not otherwise agree in a writing signed by them to be liable for the franchisee's obligations, they argue that this statute of frauds provision bars the enforcement of the franchise agreement against them. Mot. at 9.

In response, Sizzling Black Rock argues (i) that its claims do not implicate the statute of frauds and (ii) even if the statute of frauds were to apply, the requirements of the statute of frauds are not satisfied here. The Court agrees with Sizzling Black Rock that its claims as alleged do not implicate the statute of frauds.

The provision cited by the Strems Defendants requires promises "to answer for the debt, default, or misdoings of another person" to be reduced to a signed note or memorandum. See Mich. Comp. L. § 556.132. But the complaint alleges that the Strems Defendants have breached their own obligations under the franchise agreement, not that they have breached their obligation to answer for the breach of the franchisee. For example, Sizzling Black Rock alleges that the

8

Strems Defendants violated their obligations under section 18 of the franchise agreement, which contains the post-termination requirements. Am. Compl. ¶¶ 42–43. Section 18 throughout uses "You" in identifying who it applies to—for example, section 18.3 reads:

> You shall take such action as may be necessary to cancel any assumed name or equivalent registration which contains the mark "Black Rock Bar & Grill" or any other service mark or trademark of ours, and you shall furnish us with evidence satisfactory to us of compliance with this obligation within five (5) days after termination or expiration of this Agreement.

Franchise Agreement at PageID.758. Other provisions Sizzling Black Rock cites as the Strems Defendants having violated also use the word "you."

The franchise agreement stated that the term "you" and "your," as well as the Strems Defendants, are specifically included with the term "Franchisee." These facts plausibly support the contention that the complaint alleges that the Strems Defendants breached their own obligations. The statute of frauds does not preclude the enforcement of the franchise agreement.

C.     **Failure to State a Claim**[2]

Finally, the Strems Defendants argue that Sizzling Black Rock has failed to state any claims against them upon which relief can be granted. See Mot. at 19–24.

1.     **Federal and Common-Law Trademark Infringement**

Regarding Sizzling Black Rock's claims for both federal and common-law trademark infringement, the Strems Defendants argue that Sizzling Black Rock seeks to hold the Strems Defendants vicariously liable, as Principals of the franchisee, for the franchisee's purported common-law trademark infringement and violation of the Lanham Act. See Mot. at 21. To do

---

[2] To survive a Rule 12(b)(6) motion, a plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." Bell Atlantic Corp. v. Twombly, 550 U.S. 544 (2007). The plausibility standard requires courts to accept the alleged facts as true and to make all reasonable inferences in favor of the plaintiff. Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009).

9

so, they argue, Sizzling Black Rock would have to allege sufficient facts to establish either that (i) Black Rock Coral Springs's corporate veil should be pierced, or (ii) the Strems Defendants directed, controlled, ratified, participated in, or were the moving force behind the infringing activity. Id. at 21–22 (citing Hair Assocs., Inc. v. Nat'l Hair Replacement Servs, Inc., 987 F. Supp. 569, 590–591 (W.D. Mich. 1997)). Because Sizzling Black Rock has not alleged either, the Strems Defendants argue, the claim for federal trademark infringement must be dismissed. In response, Sizzling Black Rock argues that it does not seek to bring these claims against the Strems Defendants under a theory of vicarious liability, but instead it brings its claims against them directly.

In the amended complaint, under each Count, Sizzling Black Rock specifically brings the claim against all Defendants, including the Strems Defendants. Under Count I, for violation of the Lanham Act, Sizzling Black Rock alleges, among other things:

> Defendants' continued allowance of BR CORAL SPRINGS's registration, maintenance, and use of "BLACK ROCK CORAL SPRINGS, LLC" after termination of the Franchise Agreement, as agreed upon by Defendants, including but not limited to Mr. Strems, FRANCHISE HOLDINGS, Mr. Samson, and 7TH BITE as the Principals and respective signatories to the Franchise Agreement, under Section 9.3.1 of the Franchise Agreement, constituted an effort to dilute, destroy, "palm off," and appropriate to Defendants the goodwill, trade name, trademarks and service marks of BLACK ROCK. Defendants' conduct infringed on BLACK ROCK's trademark rights, all in violation of Section 32(1) of the Lanham Act, 15 U.S.C. §1114.

Am. Compl. ¶ 67. Similarly, under Count II, for common-law trademark infringement, Sizzling Black Rock alleges, among other things:

> Defendants' allowing of BR CORAL SPRINGS's use of BLACK ROCK's Marks after termination of the Franchise Agreements, as agreed upon by Defendants under Section 9.3.1 of the Franchise Agreement, constituted willful and intentional trademark infringement.

Am. Compl. ¶ 82.

The Court is satisfied that Sizzling Black Rock has sufficiently alleged direct liability at the motion to dismiss stage and will not dismiss the trademark violation counts for failure to state a claim.

**2. Breach of Franchise Agreement**

Regarding Sizzling Black Rock's claim for breach of the franchise agreement, the Strems Defendants argue that no contract exists between Sizzling Black Rock and the Strems Defendants. See Mot. at 23–24. As explained above, in the sections evaluating the Strems Defendants' arguments based on personal jurisdiction and Michigan's statute of frauds, the Court finds that, at the motion to dismiss stage, Sizzling Black Rock has sufficiently alleged a contractual agreement between itself and the Strems Defendants. The Court will not dismiss this count on those grounds.

### III. CONCLUSION

For the reasons set forth above, the Court denies the Strems Defendants' motion to dismiss in its entirety (Dkt. 42).

SO ORDERED.

Dated: March 20, 2025　　　　　　　　　　　s/Mark A. Goldsmith
　　Detroit, Michigan　　　　　　　　　　　MARK A. GOLDSMITH
　　　　　　　　　　　　　　　　　　　　United States District Judge